**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kristel S. Defrees, | No. CV-15-00339-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

Plaintiff Kristel S. Defrees seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act.  Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     Background.**

Plaintiff, a 31-year-old female, has a high school diploma and previously worked as a fitness supervisor, a claims administrator, a medical biller, a retail sales associate, and a university resident aide.  On June 29, 2011, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning April 28, 2011.  On March 19, 2013, she appeared with her attorney and testified at a hearing before the ALJ.  A vocational expert also testified.  On July 12, 2013, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act.  The Appeals

1   Council denied Plaintiff's request for review of the hearing decision, making the ALJ's

2   decision the Commissioner's final decision.

3   **II.    Legal Standard.**

4           The district court reviews only those issues raised by the party challenging the

5   ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court

6   may set aside the Commissioner's disability determination only if the determination is

7   not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d

8   625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, less than a

9   preponderance, and relevant evidence that a reasonable person might accept as adequate

10  to support a conclusion considering the record as a whole.  *Id.*  In determining whether

11  substantial evidence supports a decision, the court must consider the record as a whole

12  and may not affirm simply by isolating a "specific quantum of supporting evidence."  *Id.*

13  As a general rule, "[w]here the evidence is susceptible to more than one rational

14  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be

15  upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

16  **III.   The ALJ's Five-Step Evaluation Process.**

17          To determine whether a claimant is disabled for purposes of the Social Security

18  Act, the ALJ follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears

19  the burden of proof on the first four steps, but at step five the burden shifts to the

20  Commissioner.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

21          At the first step, the ALJ determines whether the claimant is engaging in

22  substantial gainful activity.  § 404.1520(a)(4)(i).  If so, the claimant is not disabled and

23  the inquiry ends.  *Id.*  At step two, the ALJ determines whether the claimant has a

24  "severe" medically determinable physical or mental impairment.  § 404.1520(a)(4)(ii).  If

25  not, the claimant is not disabled and the inquiry ends.  *Id.*  At step three, the ALJ

26  considers whether the claimant's impairment or combination of impairments meets or

27  medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.

28  § 404.1520(a)(4)(iii).  If so, the claimant is automatically found to be disabled.  *Id.*  If

not, the ALJ proceeds to step four.  At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work.  § 404.1520(a)(4)(iv).  If so, the claimant is not disabled and the inquiry ends.  *Id.*  If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience.  § 404.1520(a)(4)(v).  If so, the claimant is not disabled.  *Id.*  If not, the claimant is disabled.  *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016, and that she has not engaged in substantial gainful activity since April 28, 2011.  At step two, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder with anxiety and depression, somatoform disorder,[1] body dysmorphic disorder, Lyme disease, and hypercoagulable state.[2]  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.  At step four, the ALJ found that Plaintiff has the RFC to perform "sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) except the claimant can understand, remember, and carry out simple and detailed work tasks.  The claimant is limited to superficial, occasional interaction with the public."  The ALJ further found that Plaintiff is unable to perform any of her past relevant work.  At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

---

[1] Somatic symptom disorder "involves having a significant focus on physical symptoms—such as pain or fatigue—to the point that it causes major emotional distress and problems functioning."  *Somatic symptom disorder*, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/somatic-symptom-disorder/basics/definition/con-20124065 (last visited September 25, 2015).

[2] A hypercoagulable state occurs when "blood tends to clot too much."  It is also known as thrombophilia.  *Hypercoagulable states (blood clotting disorders)*, Cleveland Clinic, https://my.clevelandclinic.org/services/heart/disorders/hypercoagstate (last visited September 25, 2015).

**IV.    Analysis.**

Plaintiff argues the ALJ's decision is defective for two reasons: (1) the ALJ improperly weighed the opinions of Plaintiff's medical sources, and (2) the ALJ erred in evaluating Plaintiff's credibility.  The Court will address each argument below.

**A.    The ALJ Did Not Err In Weighing Plaintiff's Opinion Evidence.**

Plaintiff argues that the ALJ improperly weighed the opinions of the following medical sources: Jonathan Murphy, M.D., and Dana Rosdahl, Ph.D., RN, FNP-BC.  The Court will address the ALJ's treatment of each opinion below.

**1.    Jonathan Murphy, M.D.**

Dr. Jonathan Murphy treated Plaintiff for Lyme disease.  Plaintiff argues that the ALJ improperly weighed Dr. Murphy's medical opinion.

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, an ALJ should give greatest weight to a treating physician's opinion, and more weight to the opinion of an examining physician than to one of a non-examining physician.  *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995).  If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).  The ALJ need not accept the conclusions even of treating physicians where they are "brief, conclusory, and inadequately supported by clinical findings."  *Thomas*, 278 F.3d at 957.

Under the relevant Social Security Administration regulations, there are several factors to be considered when evaluating medical opinion evidence.  To begin, both the length of the treatment relationship and the frequency of examination are relevant.  20 C.F.R. § 404.1527(c)(2)(i).  The regulations provide that the more times a claimant has been treated by the source, the more weight will be afforded the opinion.  *Id.*  In addition, the nature and extent of the treatment relationship is relevant.  § 404.1527(c)(2)(ii).  A medical opinion's weight is also affected by the relevant evidence on which it rests,

including medical signs and laboratory findings.  § 404.1527(c)(3).  Finally, the more consistent a medical opinion is with the entire record, the more weight the opinion is to be afforded.  § 404.1527(c)(4).

Although Dr. Murphy met with Plaintiff several times during a three month period in 2012, he only examined her once, on April 12, 2012.  A.R. 333-38.  Dr. Murphy's physical examination revealed Plaintiff was "[n]ormotensive, in no acute distress," but exhibited weak gait, needed assistance "to ambulate distances," and possessed diminished strength in her hands.  A.R. 335.  On June 4, 2012, Dr. Murphy submitted a medical assessment of Plaintiff's ability to do work related activities.  A.R. 326-28.  He opined that pain and fatigue constituted a moderately severe limitation on Plaintiff's ability to function, including limits of no more than one hour of sitting and one hour of standing or walking, in ten-to-fifteen minute increments, per eight hour work day.  A.R. 326-28.  Further, Dr. Murphy opined that Plaintiff required "supine rest after either [fifteen] minutes on her feet or [one] hour in seated position."  A.R. 326.  Ultimately, Dr. Murphy concluded that Plaintiff could not perform even sedentary work.  A.R. 25.

The ALJ afforded Dr. Murphy's medical opinion no weight because his assessment was based on only one examination and was therefore likely subjective, rather than based on Dr. Murphy's limited objective findings.  *Id.*  Furthermore, the ALJ found Dr. Murphy's conclusions to be inconsistent with both Dr. Murphy's own clinical findings and Plaintiff's other medical records.  *Id.*  Finally, the ALJ noted that, although Dr. Murphy was a board-certified medical physician, Dr. Murphy's credibility was undermined by a note in nurse practitioner Dana Rosdahl's records that she "[f]ound a doctor to sign off on [Plaintiff's] disability paperwork.  They will be requesting her test results and he will sign off on everything.  His name is Dr. Murphy at Arizona Center for Advanced Medicine."  A.R. 25, 395.

Plaintiff asserts that the ALJ erroneously concluded that Dr. Murphy's opinion was a subjective, single assessment, but Plaintiff submitted evidence showing that Dr. Murphy examined her only once.  Plaintiff did not establish a treating relationship with

Dr. Murphy sufficient to demonstrate a "longitudinal picture of [her] impairment." § 404.1527(c)(2)(i).  In addition, the ALJ correctly observed that Dr. Murphy's modest clinical findings in his April 12, 2012, examination do not support the drastic limitations he recommended in his June 4, 2012, medical assessment.  A.R. 25.  During his examination, Dr. Murphy noted that although Plaintiff was "[n]ormotensive, in no acute distress," she did require assistance to "ambulate distances" and "otherwise has a weak ataxia."  A.R. 335.  Dr. Murphy also observed that Plaintiff had a "weak gait" and "diminished strength" in her hands.  *Id.*  In his medical assessment, Dr. Murphy opined that pain and fatigue constituted a moderately severe limitation on Plaintiff's ability to function, including limits of no more than one hour of sitting and one hour of standing or walking, in ten-to-fifteen minute increments, per eight hour work day.  A.R. 326-28.  Dr. Murphy ultimately concluded that Plaintiff could not perform even sedentary work.  A.R. 25.  Dr. Murphy's objective medical findings do not support such extreme limitations. § 404.1527(c)(3).  In particular, Dr. Murphy's findings do not reveal any objective evidence on which to conclude that Plaintiff cannot sit for more than one hour per eight-hour work day, which was necessary to conclude that Plaintiff could not even perform sedentary work.  The ALJ did not err in concluding that Dr. Murphy's findings are inconsistent with his own clinical findings and with the preponderance of Plaintiff's medical records.  *Thomas*, 278 F.3d at 957; § 404.1527(c)(4).

Plaintiff also asserts that the ALJ erred in concluding that Dr. Murphy lacked credibility.  The ALJ found that Dr. Murphy's credibility was undermined by nurse practitioner Dana Rosdahl's note that they had "found a doctor" to "sign off on" Plaintiff's disability paperwork.  Although such a note may not in itself be sufficient to discount the opinion of a treating physician, it is relevant and can be considered with other factors.  *See Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1996) (upholding ALJ's finding that treating physician's report was untrustworthy because it was procured solely for purposes of the administrative hearing, varied from the physician's own treatment notes, and was worded ambiguously to assist the claimant's attempts to obtain

benefits).

The ALJ found that Dr. Murphy's credibility was undermined by inconsistency with Nurse Rosdahl's records. § 404.1527(c)(4). This was not error. For example, Dr. Murphy observed that Plaintiff exhibited "weak gait" when he examined her on April 12, 2012. A.R. 335. Nurse Rosdahl, however, noted that Plaintiff exhibited a normal gait on over thirty occasions over an 18-month period. *See, e.g.*, A.R. 262, 459. Notably, Nurse Rosdahl observed a normal gait on the occasions immediately before and after Dr. Murphy examined Plaintiff, on March 29, 2012, and April 17, 2012. A.R. 393, 396. Such inconsistencies in the record support the ALJ's decision to discount the weight of Dr. Murphy's medical opinion, especially in light of the role that Plaintiff's poor ambulation played in Dr. Murphy's opinion. § 404.1527(c)(4).

The Court finds that the ALJ provided clear and convincing reasons for discounting Dr. Murphy's medical opinion and that those reasons are supported by substantial evidence. *Lester*, 81 F.3d at 830.

## 2.    Dana Rosdahl, Ph.D., RN, FNP-BC.

Dana Rosdahl, a certified nurse practitioner and former professor of nursing at Arizona State University, treated Plaintiff for Lyme disease and fatigue. Plaintiff argues that the ALJ improperly weighed Nurse Rosdahl's opinion evidence.

Nurse practitioners are not "acceptable medical sources" for documenting a medical impairment. 20 C.F.R. § 404.1513(a). They are, however, considered "other sources" the Commissioner may rely on to show the severity of a claimant's impairments and how those impairments may affect her ability to work. § 404.1513(d)(1). The ALJ may discount testimony from other sources if he provides "reasons germane to each witness for doing so." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citations omitted). A germane reason includes a conflict between treatment notes and a treating provider's opinion. *Id.* A germane reason also includes the fact that an opinion is inconsistent with objective medical evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Nurse Rosdahl treated Plaintiff from June 2011 to January 2013.  A.R. 26.  Nurse Rosdahl's physical examinations of Plaintiff over that time period revealed that generally Plaintiff was well-developed, well-nourished, and in no acute distress.  *Id.*  Plaintiff also generally exhibited normal breath sounds, normal gait, and normal mental and emotional status.  *Id.*  Nurse Rosdahl provided a medical assessment of Plaintiff's ability to do work related activities on two separate occasions.  A.R. 356-58, 472-74.  On June 14, 2011, Nurse Rosdahl opined that pain and fatigue constituted a severe limitation on Plaintiff's ability to function, and recommended limits of no more than one hour of sitting and less than one hour of standing or walking per eight hour work day.  A.R. 356-58.  On January 22, 2013, Nurse Rosdahl provided a second assessment, reaching substantially similar conclusions.  A.R. 472-74.  Ultimately, Nurse Rosdahl concluded that Plaintiff could not perform even sedentary work.  A.R. 26.

The ALJ noted that Nurse Rosdahl's opinion did not qualify as an acceptable medical source because she is a nurse practitioner.  A.R. 26.  The ALJ afforded Nurse Rosdahl's opinion very little weight due to inconsistencies between her treatment notes and her opinion, and inconsistencies within the notes themselves.  A.R. 26-27.  The ALJ noted that the objective physical manifestations set forth in Nurse Rosdahl's notes were inconsistent with the radical limitations recommended in both of her assessments.  A.R. 26.   In addition, the ALJ highlighted inconsistencies within Nurse Rosdahl's treatment notes, including conflicting evidence as to whether Plaintiff had experienced any unintended weight gain or loss and whether Plaintiff had been working since the alleged onset date.  A.R. 26-27.

Plaintiff asserts that the ALJ rejected Nurse Rosdahl's opinion because she is a nurse practitioner and not an acceptable medical source.  The ALJ correctly noted that the opinions of nurse practitioners are not "acceptable medical sources" as defined by the relevant Social Security Administration regulations (§ 404.1513(a)), but did not completely disregard Nurse Rosdahl's opinion.  Instead, the ALJ considered the opinion to the extent it was credible to show the severity of Plaintiff's impairments and how those

impairments affect her ability to do work.  *Id.*

Plaintiff also asserts that the ALJ erred by relying on inconsistencies within the record to discount Nurse Rosdahl's opinions.  Despite the fact that over an 18-month period Nurse Rosdahl's physical examinations generally indicated that Plaintiff was healthy, Nurse Rosdahl opined on two occasions that Plaintiff was subject to severe work limitations.  The ALJ did not err in concluding that the opinion was inconsistent with Nurse Rosdahl's own treatment notes.  *Ghanim*, 763 F.3d at 1161.  Nor did the ALJ err in finding the treatment internally inconsistent.  For example, the notes contain inconsistencies with respect to whether Plaintiff had experienced any unintended weight gain or loss.  A.R. 396, 399, 402.  The notes are also inconsistent as to whether Plaintiff was working after the alleged onset date, an inconsistency the ALJ particularly noted and which is discussed below.

The Court finds that the ALJ provided germane reasons for discounting Nurse Rosdahl's opinion and that those reasons are supported by substantial evidence in the record.  *Id.*

**B.     The ALJ Did Not Err in Evaluating Plaintiff's Credibility.**

Plaintiff argues that the ALJ erred in evaluating her credibility.  In evaluating credibility, the ALJ is required to engage in a two-step analysis:  (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Applying this two-step procedure, the ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  The ALJ then found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not credible.  The ALJ gave two primary reasons.  First, the ALJ noted that Plaintiff made numerous statements indicating that she had

worked after the alleged disability onset date.  A.R. 21-22.  Second, the ALJ found that Plaintiff provided inconsistent information regarding her daily activities.  A.R. 22. Plaintiff challenges both of these findings.

Evidence of work after the onset date is relevant to a claimant's credibility. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  At the hearing, Plaintiff maintained that she had not worked since April 28, 2011, the disability onset date.  A.R. 38-39, 52.  This is consistent with the Social Security Administration's earning records. A.R. 180-81.  Plaintiff's assertions at hearing, however, are contradicted by Nurse Rosdahl's treatment notes.  Nurse Rosdahl met with Plaintiff dozens of times over an 18-month period after April 28, 2011.  *See, e.g.*, A.R. 267, 465.  During that time period, the notes refer to Plaintiff's employed status over forty times.  *See* A.R. 267-465.  The notes contain numerous statements by Plaintiff indicating that she was working after April 28, 2011.  For example, on September 1, 2011, Plaintiff stated that she "[f]eels a lot of stress with her landlord and boss."  A.R. 287.  On October 25, 2011, Plaintiff reported that fatigue made it "very difficult to do . . . her job."  A.R. 305.  On April 17, 2012, Plaintiff reported having an "incredible" three weeks, including "[g]oing to the pool, walking and working."  A.R. 395.  On May 10, 2012, Plaintiff reported nasal congestion because "there is a tree at work that is bothering her[.]"  A.R. 402.  On August 29, 2012, Nurse Rosdahl noted that Plaintiff "is [two] months behind in her work.  She has been out of work most of last week.  She only went into work to do payroll."  A.R. 446.  On October 2, 2012, Plaintiff stated that she "forces herself to go to work" even though she "can get short of breath sitting at work."  A.R. 458.  Given these and other references cited by the ALJ (A.R. 22), the Court finds substantial evidence to support the ALJ's finding that Plaintiff's credibility was harmed by inconsistent statements about her work after the alleged onset date.  *Greger*, 464 F.3d at 972.[3]

---

[3] The ALJ's finding on this issue is not inconsistent with his determination at step two that Plaintiff had not engaged in substantial gainful activity since April 28, 2011. The ALJ specifically noted at step two that there were numerous references to work in the medical records, but thought it best to "give the claimant the benefit of the doubt" at step two and proceed with a "sequential evaluation."  A.R. 17.

Evidence of participation in everyday activities indicating "capacities that are transferable to a work setting" or nullifying "claims of a totally debilitating impairment" is also relevant to a claimant's credibility. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations omitted).  During the hearing, Plaintiff testified that she constantly experiences severe fatigue and pain, and suffers daily migraines.  A.R. 40, 43.  She testified that she needs help getting out of bed and with her daily activities, including cooking, bathing, and opening things, such as a medicine bottle.  A.R. 40, 42.  Plaintiff testified that it is painful to walk, sit, or stand, and that she cannot lift anything heavier than a small book.  A.R. 45.  Plaintiff testified that she often has trouble thinking, which she described as "foggy brain."  A.R. 41.  Plaintiff also testified that she takes medication to help with her ailments, and that the medication causes several side effects, including dizziness, nausea, diarrhea, constipation, and, occasionally, stomach bleeding.  A.R. 44.

The ALJ found inconsistencies in Nurse Rosdahl's treatment notes.  A.R. 22-23.  For example, the notes refer to an "incredible" three week period during which Plaintiff was "[g]oing to the pool, walking and working."  A.R. 395.  The notes mention that Plaintiff attended a "water aerobics class," despite her testimony that her only hobby was reading.  A.R. 458.  The notes reflect that Plaintiff took a two-day trip to Disneyland.  A.R. 49-50, 359.  Contrary to Plaintiff's assertion of daily migraines, the notes reflect visits where Plaintiff "denied any migraine headaches" and where she reported that her headaches "come and go, not a big problem."  A.R. 451, 388.  The ALJ also noted that although Plaintiff claims severe gastro-intestinal problems, she has not sought diagnosis or treatment for these conditions; although she claims fibromyalgia and rheumatoid arthritis, she produced no record of such diagnoses; and although she claims disabling depression and anxiety, with memory and concentrations problems, she has not sought treatment by a board certified mental health professional.  A.R. 23-24.

The Court finds that the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's testimony, and that those reasons are supported by substantial

1  evidence.  *Vasquez*, 572 F.3d at 591.[4]

2       **IT IS ORDERED** that the final decision of the Commissioner of Social Security

3  is **affirmed**.  The Clerk shall enter judgment accordingly and **terminate** this case.

4       Dated this 25th day of September, 2015.

5

6

7

8  _____
                   David G. Campbell

9             United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  _____

26      [4] Plaintiff also objects, in passing, to the ALJ's determination that the record

27  lacked sufficient information to conclude that Plaintiff could not perform even sedentary
work.  A.R. 26.  Plaintiff cannot disclaim responsibility for an inadequate record on this
point.  Plaintiff failed to attend the consultative physical examination.  A.R. 77.  She also

28  failed to submit additional medical records that the ALJ requested during the hearing.
A.R. 18.